IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH RICHARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No.  1:23-cv-00408 |
| ) | |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |

## NOTICE OF REMOVAL

Defendant BNSF Railway Company ("BNSF"), by its attorneys, Daley Mohan Groble, P.C., pursuant to 28 U.S.C. §§ 1441 and 1446, hereby removes this action from the Circuit Court of Cook County, Illinois (the "Circuit Court") to the United States District Court for the Northern District of Illinois. In support of its Notice of Removal, BNSF states as follows:

## PLAINTIFF'S COMPLAINT

1. Plaintiff commenced this action on December 12, 2022, by filing a Complaint in the Circuit Court, cause no. 2022 L 010950. (*See* Complaint, attached hereto as Exhibit A). BNSF was served with the Complaint and Summons on December 22, 2022. (*See* Affidavit of Service, attached hereto as Exhibit B). No other process, pleadings or orders have been served upon BNSF.

2. Plaintiff alleges that on December 13, 2020, he was employed by non-party Pacific Rail Services, LLC ("PRS") and was working in an intermodal rail yard owned and controlled by BNSF. (Complaint, Ex. A, Count I, ¶¶ 3-4). Plaintiff alleges that he was "assigned" to close an IBC (inter-box connector) and that a "train car ladder broke" causing him to be "seriously injured." (*Id*., ¶¶ 6, 15).

1

## **BASIS FOR FEDERAL JURISDICTION**

3. This Court has original jurisdiction of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

4. Removal is timely under 28 U.S.C. § 1446(b)(1) and Fed. R. Civ. P. 6 because BNSF has filed this notice within thirty days after its receipt of Plaintiff's Complaint.

### *Diversity of Citizenship*

5. BNSF is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Texas. Pursuant to 28 U.S.C. § 1332(c)(1), BNSF is deemed to be a citizen of the State of Delaware and the State of Texas.

6. Plaintiff alleges that he is a resident of the State of Illinois. (Complaint, Ex. A, Count II, ¶¶ 1, 3). Based on Plaintiff's allegations of residence, BNSF states that Plaintiff is a citizen of the State of Illinois and is not a citizen of the State of Delaware or the State of Texas. Therefore, there is complete diversity of citizenship between Plaintiff on the one hand, and BNSF on the other hand.

### *Amount in Controversy*

7. Plaintiff has not alleged a specific amount in controversy. Plaintiff's prayer for relief requests a judgment against BNSF for "an amount in excess of the $50,000.00 jurisdictional limits of [the Circuit Court]." An affidavit attached to the Complaint signed by Plaintiff's counsel states that "the damages sought in this cause exceed the sum of FIFTY THOUSAND AND NO/100 DOLLARS ("$50,000)." The prayer and affidavit are in accordance with the rules governing pleading personal injury complaints in the Circuit Court. While the

Complaint does not plead a specific amount in controversy in excess of the jurisdictional amount required under 28 U.S.C. § 1332, BNSF states that the amount in controversy, exclusive of interest and costs, is in excess of $75,000.00.

8. According to the Complaint, the Plaintiff sustained "injuries which have caused and will continue to cause him great pain, suffering, inconvenience, anguish, and disability" and Plaintiff "has been and will in the future be kept from attending to his ordinary affairs and duties, and has lost and will lose great gains which he otherwise would have made and acquired." Plaintiff further alleges that he "has incurred medical, hospital and related expenses and is reasonably certain to incur further medical, hospital, and related expenses in the future." (Complaint, Ex. A, Count I, ¶ 15).

9. Counsel for BNSF are experienced in the defense of serious personal injury lawsuits. Based on that experience, and on the history of verdicts in similar lawsuits in the geographic area encompassed by this Court, BNSF states that if Plaintiff establishes liability against BNSF for the injuries he is alleging, a jury will likely return a verdict in excess of $75,000.00.

10. Based on the foregoing, and pursuant to 28 U.S.C. § 1446(c)(2)(B) and *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014), BNSF states that the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## REMOVAL OF CASE INVOLVING PURPORTED FELA CLAIM

### *Fraudulent Joinder Standard*

11. Plaintiff alleges that his claim against BNSF arises, in part, under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq*. ("FELA"). Federal and state courts hold concurrent jurisdiction over FELA claims, and where a plaintiff chooses to file a valid FELA

3

action in state court, the defendant is typically precluded from removing it to federal court. *See*, 45 U.S.C. § 56; 28 U.S.C. § 1445(a). That does not mean, however, that a complaint containing the term "FELA" and filed in state court can never be removed. "Plaintiff's allegations must *actually* constitute a FELA claim to take advantage of the statute's deference to forum." *Cullivan v. Kansas City Southern Railway Company*, No. 09-CV-685-JPG, 2010 WL 378433 (S.D. Ill. January 27, 2010). The Seventh Circuit has explicitly stated that "a claim does not arise under . . . FELA merely because the plaintiff names that statute in his complaint and omits (accidentally or by design) the claim's true source." *Hammond v. Terminal R.R. Association of St. Louis,* 848 F.2d 95, 97 (7th Cir. 1988). "Neither crafty wording of a complaint nor frivolous invocation of FELA bars removal." *Bunnell v. Union Pacific Railroad Company*, No. 07-CV-0686-MJR, 2007 WL 4531513 (S.D. Ill. December 19, 2007).

12. A plaintiff may not defeat removal by artfully inserting language in his complaint suggesting a nonremovable cause of action where that legal theory does not apply. *Faarup v. W.W. Transport, Inc.*, No. 15-CV-114-JPG, 2015 WL 4465070 (S.D. Ill. July 21, 2015). As the Seventh Circuit explained in *Katz v. Gerardi*, 552 F.3d 558, 560–61 (7th Cir. 2009):

> [I]t cannot be right to say that a pleader's choice of language always defeats removal. If it did, then [a plaintiff] could have pleaded a breach of contract, or a violation of duties under corporate law, and added: "this is a workers' compensation suit that cannot be removed as a result of 28 U.S.C. § 1445(c)." A pleader cannot block removal by specifying inapplicable legal theories.

13. Courts analyzing the issue generally apply the principals applicable to the fraudulent joinder of claims or parties. *See Dagon v. BNSF Railway Company*, No. 19-CV-00417-JPG, 2020 WL 4192348*3 (S.D. Ill. July 21, 2020). A plaintiff may choose his own forum, but he may not join a nondiverse defendant or add a nonremovable claim solely to destroy the defendant's ability to remove the case to federal court. Under the fraudulent joinder

4

doctrine, federal courts may disregard "for jurisdictional purposes" the citizenship of nondiverse defendants or the existence of nonremovable claims, assume jurisdiction over the case, dismiss the improper defendants or claims, and thereby properly retain diversity jurisdiction. *See Schuster v. Owners Ins. Co.*, No. 3:21-cv-00338, 2021 WL 3129303 (S.D. Ill. July 23, 2021) *4.

14. To show fraudulent joinder, a defendant must show that there is no possibility that a plaintiff can state a cause of action against a nondiverse defendant or sustain a nonremovable claim, or that there has been fraud in pleading jurisdictional facts. *See Gottlieb v. Westin Hotel Co.*, 990 F. 2d 323, 327 (7th Cir. 1993). "This possibility [of stating a cause of action], however, must be reasonable not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F. 3d 305, 312 (5th Cir. 2002). "When speaking of jurisdiction, 'fraudulent' is a term of art. Although false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim . . . that simply has no chance of success, whatever the plaintiff's motives." *Poulos v. Nass Foods, Inc.*, 959 F. 2d 69, 73 (7th Cir. 1992). The doctrine is intended to strike a "reasonable balance" among the policies that would permit plaintiffs the "tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect the defendants' statutory right to remove." *Schuster*, 2021 U.S. Dist. LEXIS 137404 *5, citing *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013).

15. A defendant seeking removal may "pierce the pleadings" of a lawsuit to show that assertion of a FELA claim is an invalid attempt to avoid removal. *See, e.g., Feichko v. Denver & Rio Grande Western R. Co.*, 213 F.3d 586, 589 (10th Cir. 2000); *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175-76 (5th Cir. 1995). It is appropriate for the district court to look beyond the complaint and consider other evidence in ascertaining whether the underlying case is subject to removal.

*Gowdy v. Norfolk Southern Ry. Co.*, No. 07-CV-0365-MJR, 2007 WL 1958592 (S. D. Ill. July 2, 2007); *Cullivan*, 2010 WL 378433 at *3. Indeed, "[i]t is well-established that the court may, in fact should, consider extrinsic evidence in determining whether plaintiff's FELA claim is legitimate." *Taylor v. Norfolk Southern Railway Company*, No. 16 C 5551, 2016 WL 6217106*2 (N.D. Ill. October 25, 2016); *see also Gowdy*, 2007 WL 1958592*2; *Cullivan*, 2010 WL 378433*3; *Veugeler v. General Motors Corp.*, No. 96 C 7278, 1997 WL 160749*2 (N.D. Ill. April 2, 1997) ("The Court is not limited by the allegations of the parties' pleadings but may 'pierce the pleadings' and consider 'summary judgment-type evidence.'"). Thus, in *Williams v. Riverway Company*, No. 05-CV-710-WDS, 2005 WL 3299372 (S.D. Ill. December 5, 2005), the court denied plaintiff's motion to remand because the defendant "presented unrebutted evidence" showing that the "plaintiff's Jones Act claim [was] baseless, and that removal was proper." *Id*. at *2.

### *Plaintiff Was Not an Employee of BNSF*

16. Plaintiff's assertion of a purported FELA claim does not preclude removal of the Complaint in this case, because that claim has no basis in fact or law. There is no FELA cause of action against BNSF because the Plaintiff was not an employee of BNSF.

17. The FELA provides that a common carrier railroad is liable for negligently causing the injury or death of any person "while he is employed" by the railroad. *See* 45 U.S.C. § 51. In order to establish a cause of action under the FELA, a plaintiff must prove four elements: (1) the defendant is a common carrier by railroad; (2) plaintiff was an employee of said common carrier; (3) plaintiff's injury was sustained while employed by the common carrier; and (4) defendant's negligence was the cause of plaintiff's injury. *Larson v. CSX Transportation, Inc.*, 359 Ill. App. 3d 830, 834 (1st Dist. 2005). BNSF is a common carrier, but liability can only

arise under the FELA when the plaintiff is an *employee* of the common carrier railroad. 45 U.S.C. § 51. The FELA does not use the terms "employee" and "employed" in any special sense. *Baker v. Texas & Pac. Ry. Co.*, 359 U.S. 227, 228 (1959) (per curiam).

18. Here, Plaintiff acknowledges that he was an employee of PRS, but alleges that he was "also" an employee of BNSF for purposes of the FELA. (Complaint, Ex. A, Count I, ¶¶ 3, 5). Under limited circumstances, a plaintiff nominally employed by a non-FELA entity may recover from a railroad under the FELA if: (1) he is a borrowed servant of the railroad; (2) he works for two employers (his own and the railroad); or (3) his employer is a servant of the railroad and he is therefore a "subservant" of the railroad. *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 324 (1974). The necessary element for employee status under any of these theories is control. *Id*.

19. To establish employee status as the railroad's borrowed or dual servant, the plaintiff must show that the railroad had a significant supervisory role over the means and manner of the plaintiff's performance of his work. *Larson*, 359 Ill. App. 3d at 835; *Ancelet v. National R.R. Passenger Corp.*, 913 F. Supp. 968, 971 (E.D. La. 1995). To establish employee status as a "subservant" of the railroad, the plaintiff must demonstrate that his nominal employer (in this case PRS) was a servant of the railroad and that the railroad had the right to control the physical conduct of the employer in the performance of the services. *Larson*, 359 Ill. App. 3d at 838; *Dominics v. Illinois Central R.R. Co.*, 934 F. Supp. 223, 226 (S.D. Miss. 1996).

20. In this case, BNSF did not exercise control over the Plaintiff or PRS's other employees, and Plaintiff therefore could never be deemed a BNSF employee under the FELA. BNSF did not control, or have the right to control, the day-to-day activities of PRS or Plaintiff at

the time of the accident, and BNSF did not perform any supervisory role over the means and manner of Plaintiff's job performance.

21. Plaintiff alleges the subject accident occurred at BNSF's Willow Springs intermodal rail facility located in Hodgkins, Illinois ("Willow Springs"). Willow Springs is a facility for the transfer of cargo units (intermodal shipping containers and freight trailers) from road to rail, and vice versa. (*See* Declaration of Benjamin J. Thomas ("Thomas Decl."), ¶ 1, attached hereto as Exhibit C). PRS provides intermodal ramp services for BNSF at Willow Springs pursuant to an Intermodal Facility Services Master Agreement ("Master Agreement") and a Supplement Agreement ("Willow Springs Supplement") pertaining specifically to operations at Willow Springs. (*Id.*, ¶¶ 2-3).

22. BNSF uses independent contractor companies to perform almost all services at Willow Springs other than the movement and spotting of trains and railcars for loading and unloading. PRS performs all lift work at Willow Springs pursuant to the Master Agreement and the Willow Springs Supplement. That work includes loading/unloading/securement of intermodal containers and freight trailers onto and off railcars, moving containers and trailers within the facility, coordinating the movement of containers and trailers and similar work related to movement of freight through Willow Springs. PRS employees at Willow Springs generally consist of: (i) coordinators (who are stationed in the Tower and communicate to PRS supervisors the track location at which railcars are to be loaded/unloaded); (ii) hostler drivers (who operate yard tractor/trucks to move containers and trailers to and from the tracks); crane operators (who operate lift equipment to move containers onto and off railcars); groundmen (who work with crane operators in the loading/unloading/securement of containers); and supervisors (who oversee the work of all PRS employees at the facility). (*Id.*, ¶¶ 4-7).

8

23. Other than the coordinators who work in the Tower, all PRS employees report to and operate out of Building A which is known as the PRS or "PacRail" building. PRS employees use a parking lot designated for PRS use, with occasional use by non-PRS employees. BNSF does not interact with PRS workers – BNSF's interaction with PRS is through the PRS coordinators and relates to the planning of loading/unloading track locations. BNSF does not direct any PRS employees on the manner in which to perform their job. BNSF does not instruct PRS on the allocation of its employees or workforce. PRS has an on-site safety supervisor at Willow Springs who is responsible for PRS employee safety matters. BNSF does not provide safety supervision for PRS or other contractors. PRS employees do not attend the BNSF quarterly safety meetings. (*Id*., ¶¶8-9).

24. BNSF does not hire or fire PRS employees, pay PRS employees, maintain personnel files on PRS employees or discipline PRS employees. (*Id*., ¶ 10). PRS owns the hostler trucks its employees use at Willow Springs. BNSF owns the lift equipment at Willow Springs, which is repaired and maintained by independent contractor Hubert Lines and operated by PRS employees. Independent contractor TTX performs all railcar repair and inspection work at Willow Springs, including inbound car inspections. (*Id*., ¶¶ 10-12).

25. The Master Agreement provides that "[i]n the performance of Services under this Agreement, [PRS] is acting as an independent contractor. All persons employed by [PRS] or any of its subcontractors in the performance of this Agreement shall be the sole employees of Provider or its subcontractors." (*See* Ex. A to Thomas Decl., p. 18). The Master Agreement and the Willow Springs Supplement confirm that BNSF does not control PRS or its employees.

26. Plaintiff alleges in conclusory fashion in the Complaint that "for purposes of the [FELA]" he was "an employee of BNSF" and that, "in the alternative . . . [he] was serving as the

9

borrowed servant of the railroad; or he was the joint employee of the railroad and PRS; or he was the sub-servant of PRS that was itself the servant of the railroad." (Complaint, Ex. A, Count I, ¶¶ 3, 5). Plaintiff's allegations that he was an employee of BNSF are without basis in fact or law and do not preclude removal of Plaintiff's action to this Court. The Court has authority to determine whether Plaintiff has shown that he was an employee of the railroad for purposes of the FELA, and Plaintiff's Complaint here "contains nothing but labels and conclusions." *Taylor*, 2016 WL 621706 *7-8. The contacts alleged between BNSF and Plaintiff as PRS' employee must indicate "direction and control," not "the passing of information and the accommodation that is obviously required in a large and necessarily coordinated operation." *Id.*, citing *Kelley*, 419 U.S. at 330.

27. Indeed, the Sixth Circuit Court of Appeals has expressly determined that PRS employees performing intermodal ramp services under the same type of services agreement as at Willow Springs are *not* BNSF employees for purposes of the FELA. *Campbell v. BNSF Ry.*, 600 F.3d 667 (6th Cir. 2010). Under *Campbell* and all of the other foregoing authorities, Plaintiff has no possibility of succeeding on a FELA claim against BNSF, and his Complaint is therefore removable.

### NOTICE TO PLAINTIFF AND STATE COURT

28. Attached hereto as Exhibit D is the Notice of Filing Notice of Removal being filed contemporaneously with the Clerk of the Circuit Court.

WHEREFORE, defendant BNSF Railway Company hereby removes this action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois.

        Respectfully submitted,

        BNSF RAILWAY COMPANY

        By: /s/ Sean M. Sullivan
            Sean M. Sullivan

Sean M. Sullivan
Jeffrey J. Scolaro
DALEY MOHAN GROBLE, P.C.
55 West Monroe Street
Suite 1600
Chicago, IL 60603
(312) 422-9999

**CERTIFICATE OF SERVICE**

      I, Sean M. Sullivan, an attorney, certify that I caused a true copy of the foregoing **Notice of Removal** to be served upon the attorneys listed below, by electronic mail and U.S. mail, on January 23, 2023:

George Brugess
Bradley N. Barker
COGAN & POWER, P.C.
One East Wacker Drive, Suite 510
Chicago, IL 60601

                                                /s/    Sean M. Sullivan
                                                      Sean M. Sullivan